SCANNED at and Emailed 5/10/17 by mwci 3 pages

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

M.A. Edwards                      # 09:1310(RNC)
vs
Semple                            May 9, 2017

## Motion Letter

Judge Chatigny I am writing you again about making a decision in my case. I having waited now 8 yrs.

You responded to my last two inquirys in 2014 and 2016 stating a decision will be done shortly.

I hope you understand my frustration of being incarcerated because of a person that does not exist. I am writing once again because the squeaky wheel gets the oil. I would like you to consider the following case US vs. Sterba 22 F. Supp 2d 1333 (M.D. Fla 1988) Prosecuter Misconduct, Witness Use, Wrong Name

Respectfully Submitted
M.A. Edwards # 163867 I'23
M.W.C.I. 1153 East St South
Suffield, CT. 06080

(1) of (1)

p1338. On July 23, 1998, a hearing occurred on the defenses motion[.] In lieu of testimony, a stipulation of facts was executed and read into the record. In pertinent part, the stipulation establishes the following facts: [...] "Gracie Greggs" took the stand it became apparent that she was the confidential informant. As is custom, defense counsel requested that his investigator attempt to find out as much information as he could about the witness. [After a thorough investigation] the investigator...as well as federal public defender investigators in Atlanta and the West Coast determined that "Gracie Greggs" did not exist.

Defense counsel approached the government and told them that the defense team had been unable to find any information on "Gracie Greggs" [The AUSA, then provided counsel with the name of Adria Jackson].

Despite confidence in his case, defense counsel was forced at that point to ask the Judge to declare a mistrial.

p1343. By a course of intentional misconduct, discovered serendipitously by the defense during trial, the prosecution goaded the defense into moving for a mistrial. The defendant's fifth Amendment immunity from double jeopardy precludes another trial and, therefore, requires the dismissal of the indictment.

### 159.70 LESSOR INCLUDED CRIME NOT PURSUED AS A DEFENSE

#### Young v. Zant, 677 F.2d 792 (CA 11 1982)

p794. [Petitioner] Young contends that his trial attorney, Reuben A. Garland, was unaware of the existence or purpose of the bifurcated trial procedure in Georgia death penalty cases whereby the issues of guilt and punishment are considered by the jury in separate proceedings; [Defense counsel] Garland believed that the jury would ... consider guilt and punishment together.

An examination of the record of the trial makes it plain that Garland did not accord [p795] Young even a modicum of professional assistance at any time.

p796. The State's burden was clear ... [t]o obtain a conviction for malice murder the prosecution was required to prove that the accused deliberately intended to kill Reuben H. flint under circumstances devoid of considerable provocation or showing an abandoned and malignant heart. [Omitted.]

p797. Because it was beyond dispute that his client had killed Reuben Flynt and might be found guilty of malice murder, [counsel] focused his entire argument to the jury on the punishment it should mete out. He abandoned any notion that the jury might be persuaded to find his client guilty of the lesser crime of manslaughter on the theory that Flynt's homicide ws committed during a hearted argument. He also abandoned, for lack of proof, his defense that his client was insane at the time of the offense. {Dist. Court reversed, writ granted.}

### 159.90 INSUFFICIENCY OF EVIDENCE--MULTIPLE COUNTS

#### Stow v. Murashiege, 389 F.3d 880 (CA 9 2004)

p886. Although Stow was charged with multiple counts, at the conclusion of the trial he was convicted only of attempted first degree murder. As noted, however, the Hawaii Supreme Court reversed his conviction for insufficient evidence and remanded the case for further proceedings. [Omitted.]

district court found that Corona--Garcia's presence in the court courtroom proved corpus delecti.]

Although the government may rely on a defendant's confession to meet its burden of proof, it has nevertheless been long established that, in order to serve as the basis for conviction, the government must also adduce some independent corroborating evidence. See *Opper*, such corroboration evidence must "tend to establish the trustworthiness of defendant's admission. *Id.* at 93, 75 S.Ct.158.

### 159.50 DOUBLE JEOPARDY, FAILED TO RAISE AS A DEFENSE

#### Murphy v. Puckett, 893 F.2d 94 (CA 5 1990)

p95. In Dec. 1981, Murphy was convicted of capital murder with burglary and armed robbery as the underlying felonies. In November 1982, on a separate indictment, he was convicted of armed robbery. Both trials arose out of the same incident, and the armed robbery charge on which Murphy was convicted in 1982 was for the same armed robbery which served as one of the underlying felonies for the 1981 capital murder conviction.

Murphy was represented by different counsel in the two prosecution and the lawyer who defended him against the armed robbery charge did not at any time, either at or before trial or on appeal, raise double jeopardy as a defense.

Murphy ... sought habeas relief in federal court because of ineffective assistance of counsel. Murphy argued that counsel was ineffective because he failed to raise double jeopardy as a defense at Murphy's armed robbery trial. The district court granted Murphy's petition.

p97. Here, the Double Jeopardy Clause would have prevented the state from trying Murphy for armed robbery. {Writ affirmed.}

### 159.50 PROSECUTOR MISCONDUCT, WITNESS USED WRONG NAME

#### U.S. v. Sterba, 22 F.Supp.2d 1333 (M.D. Fla. 1998)

p1334. [...] On October 1997, the magistrate judge entered a typical pretrial discovery order, [Among other things it reads]: The Government shall supply the defendant with a record of prior convictions of any witness who will testify for the Government at trial.

On January 26, 1998, Sterba sought to interview an informant whose existence was revealed in response to this order. However, the [AUSA] declined to permit an interview and refused to reveal the informant's name until the beginning of trial. The magistrate judge agreed with the United States.

The United States' pretrial complaince included a witness list that named "Gracie Greggs" as a government witness. Both the defense and [the court] accepted the representation that the name of the witness was "Gracie Greggs." {Of course. Gracoe Greggs was a false name.}

In accord with established practice, [this court] called upon the Assistant United States Attorney (AUSA) to read the witness list to the venire [jury], presumably to assist the prospective jurors' identifying any connection to or information about the ... witnesses. [The AUSA then read aloud the names of witnesses: "Gracie Greggs, Carole Dumestre, etc., as explained this was not the real name of the witness. Because the prosecutor used fraud in bringing witness Gracie Greggs as a witness, the defense moved to dismiss the indictment].