UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL EDWARDS,                    :
                                   :
        Petitioner,                :
                                   :                PRISONER
v.                                 :    Case No. 3:09-cv-1310(RNC)
                                   :
SCOTT SEMPLE, WARDEN               :
GARNER CORRECTIONAL                :
INSTITUTION,                       :
                                   :
        Respondent                 :

RULING AND ORDER

Michael Edwards, a Connecticut inmate, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A jury convicted Edwards of murdering George Wright, who died as a result of a gunshot wound to the head.  The gun went off during a confrontation between Edwards and Wright outside a store in Hartford during the evening of February 18, 1995.  The bullet entered the left side of the back of Wright's head and lodged near his right eye.  He died the next day.

Edwards was charged with murder, criminal possession of a firearm and criminal possession of a pistol.  Prior to trial, he rejected a plea offer that would have capped his sentence at thirty-seven years and allowed him to argue for less.  At the trial, eyewitnesses testified that Edwards grabbed Wright's clothing, held a gun to his head, and shoved him backwards along the sidewalk in front of the store.  Wright did not resist but said, "no, no, no."  Edwards then pushed Wright's head down and shot him.  Edwards testified that the gun went off as he tried to

disarm Wright.  The jury convicted Edwards of murder but acquitted him on the weapons charges.  Edwards was sentenced to fifty years in prison.

Following an unsuccessful appeal to the Connecticut Supreme Court, Edwards filed a series of state habeas petitions, which resulted in two evidentiary hearings and additional appeals. This is his fourth federal habeas petition.  The first (filed in 1999) and second (filed in 2004) were denied without prejudice for failure to exhaust state remedies.  The third (filed in 2005) was dismissed without prejudice because it contained both exhausted and unexhausted claims.  Edwards v. Choinski, No. 3:05-cv-444(MKR), 2005 WL 3334442 (D. Conn. Dec. 5, 2005).  The present petition (filed in 2009) was stayed pending the outcome of state proceedings.

In the present petition, Edwards reasserts claims that have been rejected on the merits in state court.  He has not shown that the state courts' decisions are contrary to or involve an unreasonable application federal law or an unreasonable determination of facts.  In addition, he reasserts claims that he raised in state court but did not pursue in accordance with state procedural rules.  He has not shown that these claims should be adjudicated on the merits notwithstanding his procedural default. Accordingly, his petition is denied.

I.    Standard of Review

Under 28 U.S.C. § 2254, a person in state custody pursuant to a state court conviction may challenge the conviction in federal court by applying for a writ of habeas corpus.  Section 2254(b) authorizes a federal court to grant habeas relief based on claims adjudicated on the merits in state court only when the state court's decision is (1) contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court.

Federal habeas relief is generally not available to a person in state custody unless he has exhausted remedies available in state court.  28 U.S.C. § 2254(c).  To satisfy the exhaustion requirement, a state prisoner must raise his claim in state court and properly pursue the claim through the entire appellate process.  O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); Aparicio v. Artuz, 269 F.3d 79, 89-90 (2d Cir. 2001).

If a state prisoner fails to present a federal claim in state court in accordance with the state's procedural rules, he generally will be precluded from obtaining habeas relief. Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977).  The procedural default doctrine applies when a state court actually imposes a procedural bar, see Caldwell v. Mississippi, 472 U.S. 320, 327

3

(1985), and when state court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state court review, see Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In the latter case, because no state court has actually ruled that the claim is barred, the existence of the procdcural bar must be "clear."  See Gray v. Netherland, 518 U.S. 152, 161 (1996).[1]

A prisoner can overcome a procedural default in two ways. Demonstrating "cause and prejudice" requires a showing that the procedural default was caused by something external to the prisoner that impeded his efforts to comply with the state's procedural rules and, in addition, that actual prejudice to the prisoner will result if the default is not excused.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  If cause and prejudice are not shown, the prisoner must demonstrate that failure to review the claim will result in a fundamental miscarriage of justice. Id. at 750.  This exception applies when "a constitutional violation has probably resulted in the conviction of one who is

---

[1]Generally, unexhausted claims are dismissed without prejudice to renewal after being properly pursued in state court. See Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001). When a prisoner fails to comply with a deadline making review unavailable, the claim is "technically exhausted" but "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims" because they are procedurally defaulted.  Woodford, 548 U.S. at 93. If it is not clear that a claim is procedurally defaulted, the claim usually must be dismissed without prejudice.

actually innocent." Murray v. Carrier, 501 U.S. 478, 496 (1986); see Schlup v. Delo, 513 U.S. 298, 327 (2007).

To use the actual innocence "gateway," Rivas v. Fischer, 687 F.3d 514, 539 (2d Cir. 2012), a habeas petitioner must present "a claim of actual innocence [that is] both 'credible' and 'compelling,'" id. at 541 (quoting House v. Bell, 547 U.S. 518, 521, 538 (2006)). "For the claim to be 'credible,' it must be supported by 'new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" Id. (quoting Schlup, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" Id. (quoting House, 547 U.S. at 538).

For purposes of the actual innocence exception, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); Sawyer v. Whitley, 505 U.S. 333, 339 ("The miscarriage of justice exception is concerned with actual as compared to legal innocence."); see also Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007) ("Actual innocence requires 'not legal innocence but factual innocence.'" (quoting Doe v. Menefee, 391 F.3d 147, 162

(2d Cir. 2004))).  "Because credible claims of actual innocence are 'extremely rare,' federal court adjudication of constitutional challenges by petitioners who may be actually innocent prevents miscarriages of justice, but does not threaten state interests in finality."  Menefee, 391 F.3d at 161 (quoting Schlup, 513 U.S. at 321-22).

II.  Discussion

All the claims Edwards asserts here were raised on direct appeal, in a 1999 state habeas petition, or in a 2006 state habeas petition.[2]

A.  Claims Raised on Direct Appeal

On the appeal to the Connecticut Supreme Court, Edwards presented four arguments: (1) the evidence was insufficient to

---

[2] Edwards's petition reasserts all claims brought in these three prior proceedings, see Pet. (ECF No. 1) at 3, 5, 6, and raises four ostensibly new claims: (1) the trial court improperly instructed the jury regarding reasonable doubt; (2) there was insufficient evidence presented at trial to establish the specific intent required for a murder conviction; (3) the court improperly allowed the jury to consider a statement in violation of the Confrontation Clause; and (4) the state destroyed Edwards's and Wright's clothing from the day of the shooting and presented perjured evidence, in violation of due process and Brady v Maryland, 373 U.S. 83 (1963), and it was ineffective assistance of counsel for his trial and appellate attorneys to fail to raise these claims, see id. 9-17.  Each of the four ostensibly new claims were brought in prior proceedings.  See State v. Edwards, 247 Conn. 318, 321-22, 326 (1998) (dismissing first two claims); Amended 2006 State Pet. (ECF No. 1, at 124-37), at 2-13 (raising second two claims); Edwards v. Warden, No. CV064000942, 2011 WL 2739461 (Conn. Super. Ct. May 24, 2011) (dismissing Amended 2006 State Pet.).  Thus, these claims are addressed along with the other realleged claims.

6

prove beyond a reasonable doubt that he intended to kill Wright;
(2) the trial court improperly denied his post-verdict motion for
a new trial, in which he claimed that the evidence, although
insufficient to support the murder conviction, was sufficient to
support a conviction of an unspecified lesser included offense;
(3) the trial court improperly instructed the jury on the element
of intent to kill by failing to reiterate in a supplemental
instruction that "intentional conduct is purposeful conduct
rather than conduct that is accidental or inadvertent"; and (4)
the trial court improperly instructed the jury on reasonable
doubt.  The Connecticut Supreme Court rejected all four arguments
on the merits.  State v. Edwards, 247 Conn. 318, 320 (1998).
Edwards has not shown that the Connecticut Supreme Court's
decision is contrary to or involves an unreasonable application
of clearly established federal law or is based on an unreasonable
determination of the facts in light of the evidence presented at
trial.

     Edwards claims that the Connecticut Supreme Court erred in
rejecting his challenge to the sufficiency of the evidence on the
issue of his intent to cause Wright's death.  Evidence is
sufficient to support a conviction if, viewed fully and most
favorably to sustaining the jury's verdict, it could reasonably
support a finding of guilt beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979).  Applying this standard, the

Connecticut Supreme Court held that the cumulative effect of the evidence was sufficient to permit the jury to find beyond a reasonable doubt that Edwards had the specific intent to cause Wright's death.  247 Conn. at 320-22.  Edwards argues that the eyewitness testimony was biased and conflicting.  The Connecticut Supreme Court addressed this argument.  The Court correctly explained that it had to defer to the jury's assessment of the credibility of the witnesses and could not substitute its judgment for that of the jury.  Edwards further argues that the jury's verdict convicting him of murder cannot be sustained in view of the verdicts acquitting him on the weapons charges.  The Connecticut Supreme Court addressed this argument as well stating, "We disagree with the defendant that a lack of specific intent to cause death must follow a jury finding that the defendant did not possess or arrive at the scene with a weapon." Edwards, 247 Conn. at 322.  The Court correctly concluded that the jury could credit the eyewitness testimony and find that Edwards had control of the gun when the fatal shot was fired regardless of whether he possessed the gun before his confrontation with Wright.

Edwards next claims that the Connecticut Supreme Court erred in affirming the denial of his motion for a new trial.  The Court upheld the denial of the motion on the ground that the evidence was sufficient to support the jury's verdict.  Id. at 326.  As

just discussed, the Court correctly concluded that the evidence was legally sufficient.  Thus, the Court's decision affirming the denial of the motion for a new trial does not provide a basis for federal habeas relief.[3]

Edwards claims that the Connecticut Supreme Court erred in rejecting his challenges to the jury instructions.  A jury instruction violates due process if it fails to give effect to the requirement that the state must prove every element of the charged offense beyond a reasonable doubt.  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam).  "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id.  The question is whether the challenged instruction, considered in the context of the charge as a whole, so infected the trial that the conviction violates due process.  Id.  "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Id. (quotations omitted).

In Middleton, a defendant convicted of second-degree murder

---

[3] Edwards's motion was filed pursuant to a state statute that provides a right to a new trial under certain circumstances. See id. (discussing Conn. Practice Book § 42-51). To the extent Edwards's claim here is based on an interpretation of the state statute, his claim is not reviewable. See Swarthout v. Cooke, 562 U.S. 216, 220 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quotations omitted)).

appealed on the basis of an erroneous jury instruction on the imperfect self-defense component of voluntary manslaughter under California law.  The trial court gave the jury three correct instructions that one who kills another in the actual but unreasonable belief that doing so is necessary to defend against imminent peril is guilty of voluntary manslaughter but not murder.  541 U.S. at 435.  In defining "imminent peril," however, the court erroneously stated that an imminent peril "is one that is apparent, present and immediate at the time to the slayer as a reasonable person."  Id.  The California Court of Appeals acknowledged that the words "as a reasonable person" were included in error but concluded it was not reasonably likely the jury was misled in view of the jury instructions in their entirety.  The Ninth Circuit overturned a denial of federal habeas relief and the Supreme Court reversed.  The Court held that "[g]iven three correct instructions and one contrary one, the state court did not unreasonably apply federal law when it found that there was no reasonable likelihood the jury was misled."  Id. at 438.

The Connecticut Supreme Court's decision in this case aligns with the reasoning and result in Middleton.  Edwards argues that he was deprived of a fair trial as a result of the trial court's

supplemental instruction on intent.[4]  On the direct appeal, the
state argued that it is not reasonably possible the supplemental
instruction caused the jury to mistakenly think it could convict
Edwards of murder even if it believed the shooting was
accidental.  The Connecticut Supreme Court agreed with the state.
State v. Edwards, 247 Conn. at 328.  The Court stated:

> Upon examining the entire charge, we conclude that the
> trial court properly instructed the jury on specific
> intent.  Twice in its initial charge, the trial court
> told the jury that conduct could not be intentional if
> it was accidental or inadvertent.  The trial court did
> not contradict its earlier instructions in the
> supplemental charge.  Furthermore, the jury's question
> concerned the defendant's mental or emotional state,
> not the issue of accident or inadvertence.  We conclude
> that the defendant has demonstrated neither that an
> alleged constitutional violation clearly exists nor
> that he was deprived of a fair trial.

In view of Middleton, the Court's rejection of Edwards's argument

---

[4]  In response to a note from the jury during deliberations,
the court omitted parts of its earlier charge on the issue of
intent.  The note, as described by the state court, asked:
"[D]oes intent to kill as defined require defendant's sound mind
or consciousness, i.e., fit of rage, survival, instinct, et
cetera?"  Id. at 327.  In its initial charge on intent, the court
had instructed the jury that "[i]ntentional conduct is purposeful
conduct rather than conduct that is accidental or inadvertent"
and "[a] killing cannot be intentional if it was the result of an
accident."  See id. at 329 and n.8.  In response to the note, the
court instructed the jury that they had to determine whether the
defendant acted with the intent required to commit the crime of
murder as defined in the court's previous instructions on intent.
The court then stated: "So I will remind you that the legal
definition that you must apply is as follows: A person acts
intentionally with respect to a result when his conscious
objective is to cause such a result.  It is your responsibility
to determine factually what the defendant's state of mind was."
Id. n.7.

does not constitute an unreasonable application of federal law.

Edwards also takes issue with the Connecticut Supreme Court's rejection of his claim that the jury instruction on reasonable doubt violated the Constitution.  He argues that the following part of the instruction deprived him of a fair trial: "A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts.  Nor is it a doubt suggested by the ingenuity of counsel or any of the jurors which is not justified by the evidence or lack of evidence."  The Connecticut Supreme Court held that this instruction, viewed in the context of the instructions in their entirety, did not violate due process.  State v. Edwards, 247 Conn. at 330.  Edwards has not shown that the Connecticut Supreme Court's decision is contrary to or an unreasonable application of federal law.

After Edwards's trial but before his appeal, the Connecticut Supreme Court, in the exercise of its supervisory power, cautioned state trial courts against using the phrase "ingenuity of counsel" because it can "possibly misdirect the jury's attention."  State v. Taylor, 239 Conn. 481, 504 (1996). In that same case, however, the Court held that use of the phrase was not "an error of constitutional dimension."  Id. at 505.  The challenged instruction has not been condemned by the Supreme Court as a violation of due process and the Second Circuit has

held that it does not provide a basis for federal habeas relief. See DelValle v. Armstrong, 306 F.3d 1197 (2d Cir. 2002). Edwards has not sustained his burden of showing that in the circumstances of this case, viewing the charge in its entirety, the instruction so infected his trial that the conviction violates due process.

B.  Claims in 1999 State Habeas Petition

In 1999, Edwards filed a state habeas petition. The petition alleged that Edwards's trial counsel rendered ineffective assistance in nine respects. He also alleged that his sentence was excessive and his rights to due process and equal protection had been violated. The state habeas court denied the petition. Edwards v. Warden, No. CV990423254S, 2003 WL 23191955 (Conn. Super. Ct. Dec. 29, 2003). The ineffective assistance of counsel and due process claims were rejected on the merits; the other claims were deemed abandoned. Edwards appealed the denial of two of his ineffective assistance of counsel claims: his counsel's alleged failure to make an explicit recommendation on whether the plea offer of thirty-seven years should be accepted and his alleged failure to conduct an adequate pretrial investigation.[5] The Appellate Court affirmed. Edwards v. Comm'r, 87 Conn. App. 517 (2005). Edwards did not seek discretionary review by the Connecticut Supreme Court.

---

[5] Edwards also included a claim that his attorney failed to object to a certain line of questioning but withdrew this claim during oral argument.

The present petition reasserts the claims in the 1999 petition. All the claims have been defaulted due to Edwards's failure to seek review in the Supreme Court within the applicable period. See Conn. Practice Book § 84-4. To overcome the bar created by this procedural default, Edwards attempts to show cause and prejudice. Pet. Ex. 1 (ECF. No. 1-2) at 1. In this connection, he alleges that prosecutors failed to disclose prior to trial a written statement of a third party that was used to impeach his trial testimony as to how the shooting occurred.

At the trial, Edwards testified that the gun went off as he tried to disarm Wright by pulling Wright's right hand, which held the gun, toward the left side of Wright's head and down. The state impeached his testimony using a statement he allegedly made after the shooting to a bouncer at a local restaurant, the Main and Tower Café. The bouncer, Scott Courtney Davis, gave a written statement to the police on February 24, 1995, approximately one week after the shooting, using an alias, Isaiah C. Manuel. The written statement includes the following:

> "I followed 'Mike' [Edwards] into the men's room . . . 'Mike' went to the sink grabbed a towel and began wetting the towel and wiping down the front of his jacket as he said that he had blood on him because he had just 'popped' (shot) a dude and wanted to know if I wanted to buy some guns but that one of the guns had a body on it . . . 'Mike' then stated that if I needed a gun the guns was at Angie's house right now . . . ."

Edwards v. Warden, 2011 WL 2739461, at *5.

On cross-examination, Edwards admitted that he saw Davis in

14

the bathroom and gave the gun to Angela Ford, but he denied

making incriminating statements to Davis:

> Q. And do you recall when you were at the Main and Tower
> Café, running into a guy named Isiah [sic] Manuel, or
> Manual?
>
> A. I don't know an Isiah [sic] Manual.
>
> Q. Do you remember running into the bouncer in the bathroom,
> while you were washing your hands?
>
> A. Yes.
>
>                        \*\*\*
>
> Q. And you told him that you needed to speak to him?
>
> A. No, I never said - no. Me and Courtney - Courtney's his
> real name is Courtney Davis, and Courtney Davis, me and him
> don't get along. We don't really talk.
>
> Q. You're saying that the bouncer's name is Courtney Davis?
>
> A. Yes. He's using a false name, 'cause he's wanted. And
> he's walking around the police department, wanted.
>
>                        \*\*\*
>
> Q. Do you remember indicating to the bouncer that you'd just
> popped a dude, and asked him if he wanted to buy a gun?
>
> A. No; that never happened.
>
> Q. Do you remember telling him that one of the guns had a
> body on it?
>
> A. No; that never happened.
>
> Q Do you remember telling him that the gun was at Angela's
> at that time?
>
> A. No. I never told him that.

The state sought to present Davis's written statement to the jury

but the statement was not admitted into evidence.

Edwards does not explain how the state's withholding of Davis's written statement prior to trial impeded his ability to comply with the procedural rules that governed the proceedings in state court on the 1999 habeas petition.  Nor does he provide any other explanation for the procedural default.  As a result, the "cause" requirement has not been met.

Edwards argues that failure to review the claims in the 1999 petition will result in a miscarriage of justice.  He contends that the jury was misled into believing that he confessed to Davis by saying he had "popped a dude," as recounted in Davis's written statement to the police, which Davis has recanted.  Davis's recantation does not provide Edwards with a credible, compelling claim of actual innocence.

Edwards has not shown that Davis's recantation is sufficiently reliable to support a credible claim.  At the habeas trial on the 2006 petition, Davis testified that he saw Edwards on the night of the shooting, went to the police station several weeks later, and signed a written statement as Isaiah Manuel.  Edwards, 2011 WL 2739461, at *6.  He denied, however, that Edwards said he had "popped a dude" and he also denied telling that to the police.  After hearing Davis's testimony, the state habeas court found Davis's recantation not credible.  I see no reason to reach a different conclusion.

Recantations are properly viewed with "great suspicion."

16

Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984) (Brennan,
J., dissenting from denial of certiorari); see also Ortega v.
Duncan, 333 F.3d 102, 107 (2d Cir. 2003)(noting that recantation
testimony must be looked upon with the utmost suspicion, although
its lack of veracity cannot, in and of itself, establish whether
testimony given at trial was in fact truthful).[6]  Davis's initial
statement to the police was corroborated by Edwards's own
testimony that he ran into Davis in the bathroom at the Main and
Tower Café after the shooting and, in addition, his testimony
that he gave the gun to Angela Ford.  The record does not support
a finding that when Davis made his initial statement to the
police using an alias he stood to benefit from falsely
incriminating Edwards.[7]  Moreover, Davis's testimony at the
habeas trial contradicts a statement he allegedly made to an
investigator prior to the habeas trial.  Edwards has submitted a
letter purportedly written by an investigator based on an
interview of Davis in December 2000.  See Pet. Ex. 3 (ECF No. 1-
3, at 5).  According to the letter, Davis told the investigator

---

[6] Recantations "upset[ ] society's interest in the finality
of convictions, [are] very often unreliable and given for suspect
motives, and most often serve . . . merely to impeach cumulative
evidence rather than to undermine confidence in the accuracy of
the conviction."  Dobbert, 468 U.S. at 1233-34.

[7] Edwards testified at trial that he and Davis did not "get
along," but Davis testified at the habeas trial that there was no
ill will between them.  Edwards, 2011 WL 2739461, at *6.

17

he was never interviewed by the police and never gave them a statement and did not remember talking to Edwards the day of the incident or afterward.

I also find that Edwards has failed to establish a compelling claim of actual innocence. If a properly instructed jury were to fairly consider Davis's recantation along with the rest of the evidence in the record, I do not believe it is more likely than not that no reasonable juror would find Edwards guilty. Eyewitnesses testified that Edwards pushed Wright's head down and shot him. For Edwards to tell Davis in the aftermath of the shooting that he had blood on his jacket because he had "popped a dude" comports with the eyewitness testimony concerning the shooting. Moreover, the medical examiner testified that the shooting could not have occurred in the manner Edwards described.

Because Edwards has not established cause and prejudice or made a credible, compelling claim of actual innocence, neither exception to the procedural default doctrine applies. As a result, the claims in the 1999 petition cannot be reviewed on the merits.

C. Claims In 2006 State Habeas Petition

Edwards filed another state habeas petition in 2006. This petition alleged that Edwards's habeas counsel rendered ineffective assistance by failing to raise a claim based on his trial counsel's failure to object to the prosecutor's questions

on cross-examination based on Davis's written statement, which he claimed constituted prosecutorial misconduct and violated the Confrontation Clause.  Other claims were also presented.  After a hearing, the habeas court denied the petition.  See Edwards v. Warden, No. CV064000942, 2011 WL 2739461 (Conn. Super. Ct. May 24, 2011).  Edwards's post-trial brief addressed only his claims that his prior habeas counsel rendered ineffective assistance by failing to raise a claim based on his trial counsel's failure to object to the prosecutor's questions on cross-examination. Edwards v. Warden, 2011 WL 2739461, at *2.  The habeas court deemed Edwards's other claims abandoned and declined to address them.  Id.  The Appellate Court affirmed.  See Edwards v. Comm'r, 141 Conn. App. 430, 435 (2013).  The Connecticut Supreme Court denied certification to appeal.  Edwards v. Comm'r, 308 Conn. 940 (2013).

The present petition reasserts the claims in the 2006 petition.  See Pet. (ECF No. 1) at 6 ("Every And All Issues in Attachment G(2) is ReAlleged.").  The claims that Edwards failed to address in his post-trial brief are defaulted because he did not appeal the habeas court's dismissal of those claims.  Edwards v. Warden, 2011 WL 2739461, at *2.  Edwards has not shown cause for the procedural default.  Nor has he shown that failure to address the defaulted claims will result in a miscarriage of justice.  As a result, the only claims in the 2006 petition that

19

can be reviewed are the claims rooted in the failure of Edwards's trial counsel to object to the prosecutor's questions on cross-examination.  Edwards argues that his experienced trial counsel was required to object, and his failure to do so constituted ineffective assistance, because the prosecutor's questions lacked a good faith basis and violated the Confrontation Clause.  The Appellate Court rejected both arguments.  Edwards v. Comm'r, 141 Conn. App. 430 (2013).

Applying Strickland v. Washington, 446 U.S. 668 (1984), which governs claims of ineffective assistance of counsel, the Appellate Court considered whether trial counsel's failure to object constituted deficient performance and whether the result of the proceeding would have been different if an objection had been made.  The Court concluded that no objection was required because Davis's statement, although given under an alias, was sufficiently corroborated by Edwards's testimony to provide a good faith basis for the cross-examination and, since the statement was used only for impeachment, the Confrontation Clause did not apply.[8]  With regard to prejudice, the Court concluded that an objection would not have changed the outcome of the trial.  The Court thought an objection likely would have been overruled.  Even if an objection had been made and sustained, the

---

[8] Under Crawford v. Washington, 541 U.S. 36, 54 (2004), the Confrontation Clause does not bar use of testimonial statements for impeachment.

case against Edwards would have remained strong, in the Court's view, given the eyewitness testimony and forensic evidence.  Id. at *7.  Edwards has not shown that the Court's decision unreasonably applies Strickland.

As the Appellate Court explained, when a defendant testifies, impeachment of his credibility is permitted.  Id. at 439 (citing Perry v. Leeke, 488 U.S. 272, 282 (1989)).  Edwards's direct testimony that he never had his finger on the trigger of the gun was subject to impeachment by his prior inconsistent statement to Davis that he had "popped a dude."  There was no basis for objection to the prosecutor's use of the prior inconsistent statement provided the prosecutor had a good faith basis for believing the statement had been made.  The Appellate Court's determination that the statement was sufficiently corroborated is not unreasonable.  The Court's determination that an objection would not have changed the outcome of the trial is also adequately supported.  Davis's written statement was not admitted into evidence, the prosecutor did not highlight the statement at the trial,[9] and the eyewitness testimony and forensic evidence presented to the jury was more than sufficient to support a conviction.

---

[9] The statement only came up during the state's cross-examination of Edwards and neither the state nor the defense mentioned the statement during closing arguments. Edwards, 2011 WL 2739461, at *7.

IV.   <u>Conclusion</u>

Accordingly, the petition is hereby dismissed.  Reasonable jurists would not find it debatable that the petition should be denied, so a certificate of appealability will not issue.  The Clerk may enter judgment and close the case.

So ordered this 19th day of January 2018.

_____
/s/

Robert N. Chatigny
United States District Judge